[Civ. No. 56.    Fifth Dist.    Jan. 16, 1962.]

PERCY C. FREDERICKSEN et al., Plaintiffs and Appellants, v. CHARLES L. HARNEY, Defendant and Respondent.

C. Ray Robinson, W. E. Craven, Duane W. Dresser, Charles E. Goff and Eugene A. Mash for Plaintiffs and Appellants.

Landram, Silveira, Garrett & Goul and M. Mitchell Bourquin for Defendant and Respondent.

CONLEY, P. J.—This is an appeal from an order denying plaintiffs' motion to vacate and discharge a stop notice by virtue of which the Department of Water Resources is withholding $205,000 due to appellants for services performed for the state in the construction of the San Joaquin River Flood Control Project. The motion was made in an action for declaratory relief filed by appellants, Percy C. Fredericksen and Clinton E. Kasler, copartners, doing business under the firm name and style of Fredericksen-Kasler, pursuant to the specific authorization of section 1190.1, subdivision (c), of the Code of Civil Procedure. The complaint alleges that the defendant on or about the 2d day of February, 1960, filed with the Disbursing Officer of the Department of Water Resources of the State of California a verified claim and notice to withhold the sum of $205,000 from monies that were due and payable to the plaintiffs; that on or about the 24th day of February, 1960, plaintiffs filed an affidavit demanding release of said monies; and that on or about the 4th day of March, 1960, the defendant filed a counteraffidavit. Section 1190.1, subdivision (c), of the Code of Civil Procedure authorizes the motion here in question. The court, after hearing evidence, denied the motion for discharge, and the plaintiffs filed this appeal.

In the interest of clarity, a short summary of events preceding the institution of the suit is required.

The respondent Charles L. Harney and his wife, Pauline E. Harney, are the owners of lands in Merced County, some, at least, of which are riparian to the San Joaquin River. On July 29, 1959, the Sacramento and San Joaquin Drainage District, acting by and through the Reclamation Board of the State of California, filed a proceeding in eminent domain against Charles L. Harney and his wife for the purpose of condemning rights in the real property owned by them for constructing the works of the Lower San Joaquin River Flood Control Project. Among the elements of property condemned were permanent rights of way for the levees along the river, temporary rights to the use of borrow pits located on the Harney lands, and temporary rights of way for the purpose

of carrying on the construction work. An order for immediate possession was made and served. In their answer in the condemnation case the Harneys claim that the value of their real property interests sought to be condemned is $325,000 and that severance damages, in addition, amount to $265,000. The case file in that suit shows that the action has not as yet been tried.

The appellants were awarded a contract for the construction of the necessary levees and other works, and pursuant to the order for immediate possession they entered the land of the Harneys and carried on the work to completion.

On December 4, 1959, Charles L. Harney and Pauline E. Harney filed a suit in the Superior Court of Merced County against the appellants herein, praying for an injunction and an award of damages alleged to have been tortiously caused as follows: $10,000 for fences; $5,000 for crops; $5,000 for trees; and $100,000 for punitive damages. That action has not been tried and is still pending.

On February 1, 1960, Mr. Harney filed the verified claim and notice to withhold with the accounting officer of the State Department of Water Resources. This stop notice claimed $205,000 of the monies payable to Fredericksen-Kasler for work on the project. It recited:

"This claim was incurred from the start of the job up to and including January 1, 1960[,] and it was for the value of the water that was used in compacting the fill and for the value of the money realized in developing water supply together with other claims covered under an action IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF MERCED Number 28130."

Appellants filed an affidavit and demand for release of the monies claimed, and Harney filed his counteraffidavit. Thereafter, this suit was filed and the motion made to set aside the stop notice. Under the provisions of section 1190.1, subdivision (c), of the Code of Civil Procedure, the affidavit and the counteraffidavit constitute the pleadings on the motion to set aside the stop notice.

The grounds upon which appellants' motion was made were as follows: (1) that the notice of claim of lien and to withhold did not comply with the provisions of section 1190.1 of the Code of Civil Procedure; (2) that the notice of claim of lien was not a claim included within the type or classification of claims referred to in section 1190.1 of the Code of Civil Procedure; (3) that the claimant Harney was not one

of the persons mentioned in sections 1181 and 1184.1 of the Code of Civil Procedure; (4) that the amount of the claim, as specified in the notice to withhold, was excessive; (5) that there was no basis in law for the claim referred to and set forth in said notice.

At the outset, respondent asserts that there is no right to appeal from the order and suggests that the appeal be dismissed. Respondent is in error as to this contention; section 963, subparagraph 2, of the Code of Civil Procedure specifically provides that an appeal may be taken from an order ". . . dissolving or refusing to dissolve an attachment, . . ." It has been held repeatedly in this state that a stop notice is a garnishment and, therefore, a form of attachment. (*Diamond Match Co.* v. *Silberstein,* 165 Cal. 282, 288 [131 P. 874]; *Calhoun* v. *Huntington Park etc. Assn.,* 186 Cal.App.2d 451, 459 [9 Cal.Rptr. 479]; *Butler* v. *Ng Chung,* 160 Cal. 435, 439 [117 P. 512, Ann. Cas. 1913A 940]; *Bates* v. *Santa Barbara County,* 90 Cal. 543 [27 P. 438]; *Miles* v. *Ryan,* 172 Cal. 205, 208 [157 P. 5]; *Suisun Lbr. Co.* v. *Fairfield School Dist.,* 19 Cal.App. 587, 595 [127 P. 349]; *Bianchi* v. *Hughes,* 124 Cal. 24 [56 P. 610]; *Kimball* v. *Richardson-Kimball Co.,* 111 Cal. 386, 393 [43 P. 1111]; *Steineck* v. *Haas-Baruch Co.,* 106 Cal.App. 228, 231 [288 P. 1104]; *Risdon Iron etc. Works* v. *Citizens' Traction Co. of San Diego,* 122 Cal. 94 [54 P. 529, 68 Am.St.Rep. 25]; 32 Cal.Jur.2d, Mechanics' Liens, § 53, p. 662.) The stop notice here involved is a garnishment; in fact, section 1190.1, subdivision (h), of the Code of Civil Procedure at one point refers to it as an equitable garnishment. The common sense behind the provision of the Code of Civil Procedure allowing an appeal from an order refusing to dissolve an attachment is that to hold up security money erroneously during protracted litigation would constitute a serious wrong to the person whose property is attached. In this case, for example, if the sum of $205,000 were invested in the ordinary course of business, it would earn $14,350 per year at the legal rate of interest, and this interest might well be lost if the money were impounded during the many years of potential litigation. There is no sound reason why there should not be a rapid determination of the question whether these monies are improperly impounded.

Appellants argue that Mr. Harney is not one of the persons referred to in section 1190.1 of the Code of Civil Procedure and that therefore he would have no right under any circumstances to file a stop notice, and that he is not one of

the persons specified in sections 1181 and 1184.1 of the Code of Civil Procedure. Insofar as section 1184.1 of the Code of Civil Procedure is concerned, the point is well taken, as that section is based upon work done or materials furnished ". . . at the instance or request of the owner (or any other person acting by his authority or under him, as contractor or otherwise). . . ." Section 1181 of the Code of Civil Procedure, however, provides:

"Mechanics, materialmen, contractors, subcontractors, artisans, architects, . . . machinists, builders, teamsters and draymen, and all persons and laborers of every class performing labor upon or bestowing skill or other necessary services on, or furnishing materials to be used or consumed in, or furnishing appliances, teams, or power contributing to, the construction, alteration, addition to, or repair, either in whole or in part, of, any building, structure, or other work of improvement shall have a lien upon the property upon which they have bestowed labor or furnished materials. . . ."

Furthermore, the provisions of section 1190.1, Code of Civil Procedure, in addition to referring to the persons specified in sections 1181 and 1184.1, Code of Civil Procedure, specifically give a right to file a stop notice to ". . . all persons, firms and corporations . . . performing work or furnishing materials, or both, upon any public improvement, . . ." The answer then to the basic question posed by this litigation would depend upon whether or not Mr. Harney "furnished materials" for the construction of the public improvement. Inasmuch as he made no contract for the furnishing of materials, the question would be narrowed to whether or not one whose materials are tortiously taken for the construction of a public improvement is entitled to a lien and whether any materials of Mr. Harney were actually so taken.

The respondent maintains that anyone whose property has been taken from him tortiously may waive the tort, rely upon the implied contract (*Bank of America* v. *Hill*, 9 Cal.2d 495 [71 P.2d 258] ; *Herond* v. *Bonsall*, 60 Cal.App.2d 152 [140 P.2d 121] ; *Los Angeles Drug Co.* v. *Superior Court*, 8 Cal.2d 71 [63 P.2d 1124] ; 1 Witkin, Summary of Cal. Law (7th ed. 1960) Contracts, § 19, p. 31) and secure protection under the mechanics' lien constitutional provisions and statutes.

Article XX, section 15, of the California Constitution provides:

"Mechanics, materialmen, artisans, and laborers of every class, shall have a lien upon the property upon which they

have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens.''

■ ''The right to assert such a lien is remedial in its character and should be liberally construed in its entirety with a view to effect its objects and to promote justice.'' (*Hammond Lbr. Co.* v. *Barth Inv. Corp.*, 202 Cal. 606, 610 [262 P. 31].)

(See also *Continental Bldg. etc. Assn.* v. *Hutton,* 144 Cal. 609 [78 P. 21]; *McClung* v. *Paradise Gold Min. Co.,* 164 Cal. 517 [129 P. 774]; *Martin* v. *Becker,* 169 Cal. 301 [146 P. 665, Ann.Cas. 1916D 171]; *Nolte* v. *Smith,* 189 Cal.App.2d 140 [11 Cal.Rptr. 261]; *Hendrickson* v. *Bertelson,* 1 Cal.2d 430, 432 [35 P.2d 318].)

■ Although it is a novel question, apparently never specifically determined by the courts of this state, it would appear reasonable in proper circumstances, to allow a lien to a materialman whose property has been tortiously incorporated in a structure, if he waives the tort and relies upon implied contract. For example, if a contractor, by mistake or otherwise, should convert several tons of brick owned by another person, and employ the material in the actual construction of a building, it would seem only just that the person whose property was thus taken should have a right to a materialman's lien upon waiving the tort.

As to whether Mr. Harney has in fact furnished any material for the construction of the project, we must first consult the counteraffidavit which he filed and which constitutes, with the affidavit of the appellants, the pleadings in the case. What materials does he claim to have furnished to the construction company? He incorporates by reference the claim originally filed by him which recites that the sum of $205,000 is due him, ''. . . for the value of the water that was used in compacting the fill and for the value of the money realized in developing water supply together with other claims covered under an action IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF MERCED Number 28130.''

■ Obviously, there is no right to file a stop notice ''. . . for the value of the money realized in developing water supply. . . .'' That certainly is not material of any kind. ■ And the claims in action No. 28130 are for tortious damage to trees, bushes, and fences; none of these were materials that were incorporated in the levees constructed by appellants.

This leaves only one item which respondent alleges he furnished for the construction of the project, namely, water. What water did he furnish? None certainly by contract, for there was no contract. The water was taken by the appellants from the San Joaquin River. Did Mr. Harney as a riparian owner own the corpus of any water in the San Joaquin River? The answer is clearly ''no.'' ▮ A riparian owner does not own title to any specific water in the river (*Duckworth* v. *Watsonville Water etc. Co.*, 150 Cal. 520, 525 [89 P. 338]; *Kidd* v. *Laird*, 15 Cal. 161 [76 Am.Dec. 472]; *Bader Gold Mining Co.* v. *Oro Elec. Corp.* (9 Cir. 1917) 245 F. 449, 451 [157 C.C.A. 611]; *Eddy* v. *Simpson*, 3 Cal. 249, 252 [58 Am. Dec. 408]), and respondent cannot, therefore, claim that he ''furnished'' water to compact the earth in the levees.

▮ Appellants may have done a wrong to Mr. Harney, and to all other riparian owners below him on the river, by taking water from the stream; if so, he and the others may have recourse to a proper suit to uphold their riparian rights and to claim damages for a breach, but Harney has no legitimate right to file a stop notice in the instant suit.

▮ An additional reason why the stop notice must be set aside is that respondent failed to comply with the requirements of section 4210 of the Government Code. That section provides:

''In any case in which the law of this State affords a right to a person furnishing labor or materials for a public work who has not been paid therefor to file a stop notice with the public agency concerned and thereby cause the withholding of payment from the contractor for the public work, any such person having no direct contractual relationship with the contractor, other than a person who performed actual labor for wages, may file such a notice, but no payment shall be withheld from any such contractor pursuant to any such notice, unless such person has given written notice to said contractor and the public agency concerned within 90 days from the date on which such person furnished the last of the labor or materials with respect to which the notice is given, stating with substantial accuracy the amount claimed and the name of the party to whom the labor or materials were furnished. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or by personal service. In case of any public works constructed by the Department of Public

Works of the State, such notice shall be served by mailing in the same manner as above, addressed to the office of the disbursing officer of the department or by personal service upon such officer."

This Government Code section effectively sets up a "condition precedent to the validity of any such stop notice." (35 Ops. Cal. Atty. Gen. 136, 137.) Although Mr. Harney sent numerous informal protests against the carrying on of the work, including a telegram which was seen by the state official in charge, he did not comply with the requirements of the code section. The respondent claims that appellants cannot raise this issue, saying that they did not urge it in the trial court, citing *Nanny* v. *Ruby Lighting Corp.*, 108 Cal. App.2d 856 [239 P.2d 885] for the general proposition that if a point is not raised at the trial relating to procedure in the trial which could then have been cured by a respondent, the point cannot be availed of on appeal. However, appellants correctly state that the objection was in effect made in their affidavit filed with the State Department of Water Resources which, as they say, raises the issue that there was no basis in law for Harney's claim. And the record shows that evidence was in fact introduced at the hearing by appellants on this issue; they are therefore entitled to urge this additional ground for reversal.

While, for the reasons above stated, the entire order of the trial court must be reversed, we desire to note in passing that in any event the claim of $205,000 is excessive. Mr. Ganyo, the supplier of water for the project, testified that only about 20 million gallons of water were used from the San Joaquin River in constructing that part of the project which was on the Harney land. Applying the highest price paid for any water by the contractors, 15 cents per thousand gallons, the value of the water taken from the San Joaquin River on Mr. Harney's land would not exceed the sum of $3,000.

For the reasons above stated, it is ordered that the order of the superior court be, and it hereby is, reversed, with directions to enter an order vacating and discharging the notice of claim of lien filed by the respondent with the Disbursing Officer of the Department of Water Resources of the State of California.

Brown, J., and Stone, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 14, 1962.